UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

QUICK FITTING, INC.,                       :
            Plaintiff,                :
                                          :
           v.                        :       C.A. No. 13-56S
                                          :
WAI FENG TRADING CO., LTD., et al.,     :
           Defendants.             :

### REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

      This motion to dismiss challenges whether this Court may exercise personal jurisdiction over defendants Andrew and Jacky Yung,[1] brothers who own and operate different entities comprising the Yung family business, a group of companies[2] that manufacture and sell plumbing

---

[1] Intending no disrespect, I will refer to Andrew and Jacky Yung by their first names to avoid confusion.

[2] The "Yung companies" named in the First Amended Verified Complaint (ECF No. 59) ("complaint") fall into four groups:

First, the Yung manufacturing entity, which is based in China and owned and operated by Andrew, is named as Ningbo W&F Manufactory Co., Ltd., sometimes described as W&F Manufactory Co., Ltd., ("W&F Manufactory"), as well as Ningbo EFF Manufactory Co., Ltd., sometimes just EFF Manufactory Co., Ltd., ("EFF Manufactory"). Based on the facts presented in connection with this motion, these appear to be the same entity; at some point (the record does not reveal when), the name was changed from W&F Manufactory to EFF Manufactory. W&F Manufactory/EFF Manufactory manufactures plumbing products for sale by the Yung companies based in Canada.

Second, the Yung entities engaged in selling plumbing products to distributors, which are based in Canada and now owned and operated primarily by Jacky, are Wai Feng Trading Co., Ltd ("Wai Feng Trading") and Eastern Foundry & Fittings, Inc., ("EFF Trading"). EFF Trading is the successor entity to Wai Feng Trading; EFF Trading was formed in 2011 to take over the plumbing sales business previously conducted by Wai Feng Trading. The use of the sobriquet "EFF Trading" is intended to distinguish the Yung Canadian sales entity from the Yung Massachusetts entity, whose name is very similar.

Third, the Yung entity engaged in selling plumbing products to original equipment manufacturers ("OEM"), Wai Mao Company, Ltd., ("Wai Mao") is based in Canada. The record does not reveal which Yung family member owns it.

Fourth, the complaint names a Yung company based in Massachusetts – Eastern Foundry and Fitting, LLC, ("EFF Massachusetts") co-owned by Andrew and Jacky together with an individual who lives in Rhode Island. It appears to play a bit role, if any, in the relevant events.

In addition to these Yung companies, the complaint names a Chinese entity called Cixi City Wai Feng Ball Valve Company, Ltd. ("Cixi City"). This entity is not a Yung company – it is owned and operated by an uncle of Andrew

parts with operations in China, Canada and Massachusetts.  Although Andrew and Jacky live and work in China and Canada respectively and have had almost no contact with Rhode Island, Plaintiff Quick Fitting, Inc. ("Quick Fitting"), a Rhode Island company, has attempted to hale them personally into this Court, along with the companies that they own and operate, based on three agreements with Quick Fitting signed by Andrew purportedly acting on behalf of various Yung companies and other entities.  None of the entity defendants has joined the brothers' challenge to this Court's jurisdiction.

Quick Fitting's complaint charges that Andrew and Jacky, along with the Yung companies and Cixi City, have engaged in a scheme to steal Quick Fitting's intellectual property and use it to manufacture plumbing products for sale to their own customers.  Andrew and Jacky have moved to dismiss for lack of personal jurisdiction[3] based on the insufficiency of their Rhode Island contacts to support either general or specific personal jurisdiction.  ECF No. 73. Quick Fitting concedes that Andrew's and Jacky's contacts do not come close to the quantum required for the exercise of general personal jurisdiction, but contends that their claim-related contacts are adequate for specific personal jurisdiction.  Because the evidence establishes that Andrew signed an agreement with Quick Fitting on behalf of an entity he did not have authority to bind, which agreement includes a Rhode Island forum selection clause, I find that this Court has personal jurisdiction over Andrew and recommend that his motion to dismiss be denied. Because Quick Fitting has not met its burden of showing that Jacky had sufficient personal

---

and Jacky, referred to in the record as "Uncle Johnny Lou."  In 2008 and prior, Cixi City manufactured plumbing parts that it sold to the Canadian Yung companies for resale.  In 2008, the Yung companies stopped buying plumbing parts manufactured by Cixi City.

[3] Andrew's and Jacky's father, Wai Yan "Jimmy" Yung, was also named as a defendant and also moved to dismiss based on lack of personal jurisdiction.  Quick Fitting voluntarily dismissed all claims against him without prejudice. ECF No. 93.  He is no longer a party and will not be discussed further in this report and recommendation.

contact with Rhode Island, I recommend that his motion to dismiss be granted. The reasoning follows.

## I. <u>Background</u>[4]

### A. The Three Agreements

Beginning in 2010, Quick Fitting, the owner of patents and trademarks protecting intellectual property pertaining to push-to-connect plumbing products, entered into an arrangement whereby plumbing products would be manufactured by the Yung companies using Quick Fitting specifications and intellectual property; the manufactured products were to be sold back to Quick Fitting for resale by it to its customers. To protect its intellectual property, Quick Fitting insisted on the execution of three agreements in 2010 and 2011 providing for confidentiality and non-disclosure and, as to the 2011 agreements, non-competition. All three of these agreements were signed by Andrew on behalf of the entities entering into each agreement. In its complaint,[5] Quick Fitting alleges that the actions of Defendants in stealing Quick Fitting's intellectual property breached these three agreements.

---

[4] These facts are taken from the factual allegations in Quick Fitting's complaint, as well as the affidavits, deposition testimony, and other evidence submitted in connection with this motion. It should be noted that Quick Fitting was afforded ample opportunity to develop the factual record to defend this motion. Although the motion to dismiss had been pending since June 2014, on the eve of the Court's first attempt to schedule a hearing in October 2014, Quick Fitting filed a motion asking for a delay so that it could pursue jurisdictional discovery. ECF No. 84. That motion was granted. ECF No. 85. The hearing was reconvened in December 2014.

[5] Quick Fitting's pending complaint is the First Amended Verified Complaint (ECF No. 59), which alleges that all defendants breached the confidentiality, non-disclosure and non-compete clauses in the three agreements and all defendants have illicitly used Quick Fitting's technology in their own product sales (Count I), misappropriated Quick Fitting's trade secrets (Count II), defamed Quick Fitting through false and disparaging statements to customers (Count III) and engaged in civil conspiracy to steal trade secrets (Count VIII). Quick Fitting attempted to delay this jurisdictional motion to dismiss by advising the Court on the eve of the December hearing of its intent to seek leave to amend its complaint to add additional allegations against Andrew and Jacky that it alleged would affect personal jurisdiction; this Court declined to move the hearing again. The motion to amend was filed on February 6, 2015. <u>See</u> ECF No. 100-1. Because the new factual allegations in the proposed complaint are fully developed in the jurisdictional facts presented in connection with this motion, the granting of leave to amend to add these allegations to the complaint will have no bearing on this Court's exercise of personal jurisdiction.

1.    **The 2010 Agreement**

The first of the three agreements is the License and Supply Agreement executed in February 2010 ("the 2010 Agreement"). ECF No. 59-1. It recites that it is between Quick Fitting and something known as "W&F Manufacturing." The 2010 Agreement describes "W&F Manufacturing" as "comprised of three divisions" – Wai Mao, Wai Feng Trading and Cixi City, which are collectively defined as the "Licensee." ECF No. 59-1 at 2.

Quick Fitting's complaint makes clear that it understood that W&F Manufacturing[6] is not a company; rather, it is a trade name used by the Yung companies – "just a name to tell our customer that we have these companies, like that we work with these companies." ECF No. 59 ¶ 55; ECF No. 92-1 at 9; <u>see</u> ECF No. 74 ¶ 8 (answer admits that "W&F Manufacturing is not a company"). As to the three "divisions" named in the 2010 Agreement, as of when the Agreement was executed, Wai Mao and Wai Feng Trading were the Canadian Yung companies engaged in selling plumbing products, which presumably would be selling plumbing products to Quick Fitting. However, the entity named in the 2010 Agreement in connection with manufacturing for Quick Fitting is Cixi City. Cixi City is a non-Yung company – it is the Chinese manufacturing company owned by the Yungs' Uncle Johnny Lou; Cixi City had manufactured plumbing products for the Yung companies but stopped in 2008. ECF No. 74 ¶¶ 24, 28; ECF No. 92-4 at 12; <u>see</u> ECF No. 94 at 3. As far as the jurisdictional facts tell the tale, neither Andrew nor Jacky (nor any other Yung family member) has ever had an ownership

---

[6] The reader is cautioned about the similarity of this trade name – W&F Manufac<u>turing</u> – to the name of the Yung manufacturing company based in China, W&F Manufac<u>tory</u>. The confusion caused by the proliferation of similar names has plagued this case since its very inception, starting with the complaint in a related case brought by Wai Feng Trading and EFF Trading as plaintiffs seeking payment for plumbing products sold to Quick Fitting, which went through a series of amendments to name the correct entities. While the Yung companies are responsible for the confusion caused by their use of similar names and by their repeated gaffes in misidentifying the appropriate entity, the Court is compelled to observe that Quick Fitting seems to have gone out of its way to exacerbate the confusion, perhaps to enhance its veil-piercing argument.

interest in Cixi City nor had the authority to execute contracts on behalf of Cixi City. ECF No. 92-4 at 11-12. Moreover, the Chinese Yung company owned by Andrew where the manufacturing for Quick Fitting was actually to be done – W&F Manufactory/EFF Manufactory – is not named in the 2010 Agreement. The reason for the inclusion of Cixi City instead of W&F Manufactory/EFF Manufactory is hotly disputed; the defendants claim it is a mutual mistake while Quick Fitting contends that Andrew made a misrepresentation or committed fraud.

Despite his lack of authority to sign for Cixi City, the 2010 Agreement is signed by Andrew on behalf of "LICENSEE, W&F Manufacturing and its affiliates."[7] ECF No. 59-1 at 8. According to Quick Fitting's president, he and Andrew together negotiated the 2010 agreement. ECF No. 95-3 at 3. The 2010 Agreement has Rhode Island choice of law and forum selection clauses. ECF No. 59-1 at 6.

### 2. The 2011 Non-Disclosure Agreement and the 2011 License Agreement

Prior to and during 2011, the Yung companies implemented a transition away from the Wai Feng name, replacing it with Eastern Foundry & Fittings or "EFF." ECF No. 77-5 at 5; ECF No. 92-2 at 12. Pursuant to the change, the Chinese manufacturing company owned by Andrew changed its name from W&F Manufactory to EFF Manufactory; ECF No. 92-3 at 10, while in August 2011, the Canadian company responsible for sales to distributors, Wai Feng Trading, stopped business operations and transitioned the business and employees to a new company, EFF Trading. ECF No. 92-1 at 12. The execution of this part of the name change was sloppy: Wai Feng Trading stopped operations in August, but EFF Trading was not incorporated

---

[7] Andrew says the facts developed during jurisdictional discovery establish that Quick Fitting's counsel drafted the 2010 Agreement and that Andrew signed without reading it so he did not notice that it listed Cixi City instead of W&F Manufactory. See ECF No. 92-4 at 10-12; ECF No. 95-3 at 4. Andrew's alleged failure to read what he signed is not relevant to whether he is bound by its contents. It is well settled that "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents." Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007); Fleet Nat'l Bank v. 175 Post Rd., LLC, 851 A.2d 267, 275 (R.I. 2004); see Murray v. Cunard S.S. Co., 139 N.E. 226, 228 (N.Y. 1923) (Cardozo, J.) (one "who omits to read takes the risk of the omission").

until October 25, 2011. ECF No. 92-5 at 2. However, Wai Feng Trading did not give up its charter; it existed throughout the transition to EFF Trading and continues as a shell company. ECF No. 92-1 at 10-15. The new sales company, EFF Trading, is owned by Jacky, who is also its president, while Andrew is its vice president. ECF No. 92-2 at 11. Wai Mao, the Canadian Yung company selling plumbing products to OEMs, did not change its name. ECF No. 92-1 at 17.

These changes prompted Quick Fitting and the Yung companies to enter into two new agreements.

First, on May 4, 2011, Quick Fitting entered into a Non-Disclosure Agreement ("2011 Non-Disclosure Agreement") with "Eastern Foundry and Fitting LLC." ECF No. 59-2. Like the inclusion of Cixi City instead of W&F Manufactory/EFF Manufactory in the 2010 Agreement, this appears to be wrong. "Eastern Foundry and Fitting LLC" is the legal name of EFF Massachusetts, a Yung company based in Massachusetts that apparently has nothing to do with the business arrangement with Quick Fitting. Despite mistakenly naming EFF Massachusetts, the 2011 Non-Disclosure Agreement further describes the EFF party by reference to the address in Canada associated with Wai Feng Trading, which transitioned to EFF Trading, ECF No. 59-2 at 2, corroborating Jacky's testimony that EFF Trading was supposed to be the other party. ECF No. 60-3 at 2. The 2011 Non-Disclosure Agreement is signed by Andrew, who lists his title as "G.M."; in fact, Andrew is vice president of EFF Trading. The Yungs say it was a mutual mistake to name EFF Massachusetts when EFF Trading was intended by both, while Quick Fitting does not clearly take a position on the issue. Regardless, who or what are the parties remains complicated because the 2011 Non-Disclosure Agreement was signed prematurely, during the stage of the transition from Wai Feng Trading when EFF Trading had not yet been

incorporated. EFF Trading, intended by the Yungs to be the party to the Agreement, did not

come into existence until October 25, 2011, five months after the Agreement was signed. ECF

No. 92-5 at 2. The 2011 Non-Disclosure Agreement has a Rhode Island choice of law provision,

but unlike the 2010 Agreement, it does not have a Rhode Island forum selection clause. ECF

No. 59-2 at 4.

A few weeks later, on May 31, 2011, Quick Fitting and the Yung companies executed the

third agreement, finally correctly naming the parties. ECF No. 59-3. This one is a License

Agreement ("2011 License Agreement") with EFF Manufactory, the Yung company owned by

Andrew that is engaged in manufacturing and located in China. Like the 2011 Non-Disclosure

Agreement, it is signed by Andrew as "G.M."; it includes Rhode Island choice of law and forum

selection clauses. ECF No. 59-3 at 6, 9.

### B. Andrew's and Jacky's Contact with Rhode Island.

At all times relevant to the jurisdictional analysis, Andrew has been a resident of China.

He oversees manufacturing at EFF Manufactory, although he travels occasionally to Toronto on

business or to visit family. ECF No. 60-2 at 1. Andrew avers that he has been to Rhode Island

on two, perhaps three, occasions "pursuant to these Agreements or this lawsuit" and that these

visits were all made in his corporate capacity. ECF No. 60-2 at 3. The only jurisdictionally

significant Rhode Island trip to which Quick Fitting points was in September 2011, when

Andrew and Jacky visited Quick Fitting; Andrew testified that this trip was on behalf of EFF

Trading and that he does not recall discussing any of the written agreements. ECF No. 92-4 at 9;

ECF No. 92-7 at 2. Quick Fitting points out that this trip occurred before the transition from Wai

Feng Trading to EFF Trading had been completed; EFF Trading was not incorporated until a

month later, in October 2011. In addition, Quick Fitting's jurisdictional argument relies on two

non-Rhode Island contacts that Andrew had with Mueller Industries, one of Quick Fitting's customers. Quick Fitting seems to allege, on information and belief, that during one or both of these contacts with Mueller, Andrew may have offered to sell plumbing products manufactured using intellectual property stolen from Quick Fitting. See ECF No. 59 ¶ 162; ECF No. 91 at 12. The first Mueller contact was in China in 2011, when Andrew was acting on behalf of EFF Manufactory, ECF No. 92-4 at 18, while the second was at a trade show in Tennessee, when Andrew was acting for a company owned by a non-Yung family member (Cixi Welday Plastic Products Company, a different entity from the Cixi City owned by Uncle Johnny Lou). ECF No. 92-4 at 13, 20.

Jacky resides in Toronto. ECF No. 60-3 at 1. Like Andrew, Jacky has been to Rhode Island on two occasions "pursuant to these Agreements or this lawsuit," the only trip relied on by Quick Fitting is the same September 2011 visit that Andrew testified was on behalf of EFF Trading, yet EFF Trading had not yet been incorporated. ECF No. 60-3 at 2; ECF No. 92-7 at 3.

Finally, Quick Fitting finds it jurisdictionally significant that Andrew and Jacky co-own EFF Massachusetts with Ronald Roberts, a Rhode Island resident. EFF Massachusetts seems to have little or nothing to do with the business arrangement that is the subject of the complaint, apart from having been named, in error according to the Yungs, in the 2011 Non-Disclosure Agreement instead of Wai Feng Trading/EFF Trading. Andrew has been to Massachusetts once to visit EFF Massachusetts, while Jacky has visited there twice; there is no evidence that either Andrew or Jacky ever visited the co-owner, Mr. Roberts, at his home in Rhode Island. ECF No. 60-2 at 3; ECF No. 60-3 at 2.

## II.   Applicable Law

### A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(2), a motion to dismiss for lack of personal jurisdiction imposes the burden on the plaintiff to establish the existence of jurisdiction. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). A district court may choose from three methods for determining whether a plaintiff has met its burden: prima facie, preponderance of the evidence or an intermediate standard. Id.; Barry v. Mortg. Servicing Acquisition Corp., 909 F. Supp. 65, 69-70 (D.R.I. 1995).

Here, the parties agree that this Court should deploy the prima facie standard.[8] It is the most plaintiff-friendly – the court considers only whether the plaintiff has submitted enough evidence to support personal jurisdiction and properly documented evidence is accepted as true regardless of whether the defendant disputes it. Astro-Med, Inc., 591 F.3d at 8. The defendant's facts are considered only if not contradicted by the plaintiff. Id. The court acts as a data collector, not a fact finder. Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995). Nevertheless, the prima facie method does not require the court to credit conclusory allegations, unproven assumptions, generalizations or farfetched inferences. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998); Sostre v. Leslie, No. CA 07-289 ML, 2008 WL 239527, at *8 (D.R.I. Jan. 28, 2008). It must be based on evidence of specific facts set forth in the record. Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). While the "plaintiff must go beyond the pleadings and make affirmative proof," id., here,

---

[8] The other standards, the preponderance and intermediate methods, employ different levels of review. The preponderance standard makes factual findings on disputed jurisdictional facts and is used when the circumstances of the case make it unfair to force a defendant to incur the burden of a trial on the merits without the plaintiff making more than a prima facie showing of personal jurisdiction. Barry, 909 F. Supp. at 69 (quoting Boit, 967 F.2d at 676). The intermediate method is used when the factual disputes on jurisdiction are intertwined with the merits of the plaintiff's claim, such that use of the preponderance standard is impractical; the court does not find facts, but rather determines if the plaintiff has shown a likelihood of the existence of jurisdictional facts. Id. at 69-70.

Quick Fitting's complaint is verified by its president based on his own personal knowledge or "where so indicated . . . upon information and belief." ECF No. 59 at 49. Based on the verification, the factual averments in the complaint may be considered, while the assertions based on "information and belief" are not competent evidence to defeat a motion for lack of personal jurisdiction. See Youming Jin v. Ministry of State Sec., 335 F. Supp. 2d 72, 81 (D.D.C. 2004). In addition, the parties have submitted portions of depositions, affidavits and other evidence.

### B.  Specific Personal Jurisdiction

This Court may exercise specific personal jurisdiction over a nonresident defendant only when doing so "does not offend traditional notions of fair play and substantial justice." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014); C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., No. 14-1327, 2014 WL 5861962, at *1 (1st Cir. Nov. 12, 2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The first touchstone is Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, which is coextensive with the permissible reach of the due process clause. Astro-Med, Inc., 591 F.3d at 8 n.3. Accordingly, the court must determine whether the exercise of specific personal jurisdiction satisfies due process, which requires that a nonresident defendant "purposefully avail[ed] himself of the privileges and protection of state law," such that he can "reasonably anticipate being haled into court there." Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989).

Specific jurisdiction examines: (1) whether the claims arise out of or are related to the defendant's in-state activities ("relatedness"); (2) whether the defendant has purposefully availed itself of the benefits and protections of the forum state's laws ("purposeful availment"); and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "Gestalt factors").

Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 80 (1st Cir. 2013); Sawtelle v. Farrell, 70 F.3d 1381, 1388-89 (1st Cir. 1995). The inquiry ends if the plaintiff fails to establish relatedness or purposeful availment. See Phillips Exeter Acad. v. Howard Phillips Fund. Inc., 196 F.3d 284, 288 (1st Cir. 1999). Ultimately, the court must find for the plaintiff on all three prongs. Bluetarp Fin., Inc., 709 F.3d at 80. Specific jurisdiction is evaluated claim-by-claim. Astro-Med, Inc., 591 F.3d at 9. A court may exercise specific jurisdiction over a defendant on one claim while declining to exercise personal jurisdiction on others in the same complaint. See id.

In Fiore, the Supreme Court's most recent guidance on specific personal jurisdiction, the Court found that Nevada lacked personal jurisdiction in a Bivens action against a Drug Enforcement Administration agent who had searched and seized cash from plaintiffs in Georgia while they were in transit from Puerto Rico to Nevada. 134 S. Ct. at 1119. Fiore emphasizes that personal jurisdiction rests not on the locus of the claimant's injury, but rather on whether the defendant's conduct connects him to the forum in a meaningful way. Id. at 1125. Thus, to satisfy the relatedness prong, the cause of action must arise from or relate to the defendant's contacts with the forum state. Bluetarp Fin., Inc., 709 F.3d at 80. Relatedness focuses on the nexus between a plaintiff's claim and the defendant's contacts with the forum. See Sawtelle, 70 F.3d at 1389. It is a flexible, relaxed standard, as evidenced by the disjunctive nature of the requirement that the contact "arise out of" or "relate to" the defendant's forum-state activities. Id. While flexible, relatedness still requires a material connection between the defendant's forum-state contacts and the plaintiff's cause of action. Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 25 (1st Cir. 2007).

To satisfy the purposeful availment prong, there must be evidence of "a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the

benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable."  Bluetarp Fin., Inc., 709 F.3d at 82 (quoting Hannon v. Beard, 524 F.3d 275, 284 (1st Cir. 2008)).  Purposeful availment is a "rough quid pro quo," that is, "when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." Id. (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)).  Its cornerstones are voluntariness and foreseeability.  Id.

Finally, there is the test of reasonableness.  Phillips Exeter Acad., 196 F.3d at 288; see also Harlow v. Children's Hosp., 432 F.3d 50, 67 (1st Cir. 2005) (the weaker the showing on first two prongs, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction).  The following "Gestalt factors" must guide this Court in determining reasonableness for specific jurisdiction: (1) the Yungs' burden of appearing in Rhode Island, (2) Rhode Island's interest in adjudicating the dispute, (3) Quick Fitting's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in efficient resolution of the matter, and (5) the common interests of all states in promoting substantive social policies. Bluetarp Fin., Inc., 709 F.3d at 83.  The Gestalt factors are not the only criteria a court can use when assessing reasonableness, but courts should tread lightly when adding additional factors to the mix.  See Foster-Miller, Inc., 46 F.3d at 150-51 (lower court erred in applying factor to reasonableness inquiry that was more appropriately part of a forum non conveniens analysis).

III.  **Analysis**

Quick Fitting has fired off a scattershot array of theories to justify the exercise of specific personal jurisdiction over Andrew and Jacky.  Only one finds the mark, and that one only as to Andrew.  I begin with the 2010 Agreement, which I find sufficient to support specific personal

jurisdiction over Andrew because he purported to act on behalf of an entity he lacked the authority to bind with respect to an agreement requiring application of Rhode Island law and a Rhode Island forum selection clause. I then discuss the remainder of Quick Fitting's contentions, all of which fall wide of the target.

### A. Specific Personal Jurisdiction Based on 2010 Agreement

In addition to Rhode Island choice of law, the 2010 Agreement has a Rhode Island forum selection clause, which automatically subjects the parties bound by the Agreement to this Court's jurisdiction. IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc., 437 F.3d 606, 609-10 (7th Cir. 2006) (personal jurisdiction proper over party bound by valid forum selection clause); see Groninger Ins. Agency, LLC v. Astonish Results, L.P., No. CA 11-564 S, 2012 WL 1116230, at *1 (D.R.I. Apr. 2, 2012). The 2010 Agreement was executed by Andrew on behalf of W&F Manufacturing, an unincorporated association, and its three "divisions," Wai Feng Trading, Wai Mao and Cixi City, the latter an entity that Andrew lacked the authority to bind. Relying on the settled proposition that, in the absence of mutual mistake, an individual who signs on behalf of a non-existent entity may be personally responsible for the undertakings of the entity, Bricklayers & Allied Craftsmen Local Union No. 3 v. Union Stone, Inc., No. CA 13-138-ML, 2013 WL 5701851, at *7 (D.R.I. Oct. 17, 2013) (it is well established law in Rhode Island that individuals who enter into contracts on behalf of non-existent corporate entities are personally liable), Quick Fitting argues that Andrew is subject to specific personal jurisdiction because he personally signed an agreement submitting to jurisdiction in Rhode Island for Cixi City without authority and for W&F Manufacturing, an association that was not an entity. Quick Fitting also contends that the 2010 Agreement is sufficient for specific personal jurisdiction over both Andrew and

Jacky because they were doing business as W&F Manufacturing and are subject to personal liability for all actions taken in its name.

Courts considering such circumstances consistently hold an individual who signs an agreement on behalf either of the wrong company or of a non-existent company may be subject to personal jurisdiction based on the forum selection clause. For example, in Medrad, Inc. v. Sprite Development, LLC, two individuals signed a contract with a forum selection clause on behalf of a non-entity identified as "Sprite Solutions, LLC." No. 08 CV 5088, 2010 WL 3700826, at *4 (N.D. Ill. Sept. 8, 2010). The individual defendants argued this was a mistaken reference to a different entity or to an entity that had been dissolved shortly before they signed the contract. Id. The court invoked the "general rule . . . that individuals signing a contract on behalf of a nonexistent corporation . . . will be individually liable on that contract" unless the plaintiff shared the defendants' understanding as to the true party to the contract and was neither "confused [n]or misled." Id. Because the plaintiff denied mutual mistake and claimed it had been misled by wording in the contract, Medrad reasoned that the court could exercise personal jurisdiction over the individuals who had signed on behalf of the nonexistent corporation. Id. at *4-5; see Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C., 455 F. Supp. 2d 236, 243 (W.D.N.Y. 2006) (no personal jurisdiction over individual based on forum selection clause when no allegation plaintiff was misled by wrong name on contract); Spanierman Gallery, PSP v. Love, 320 F. Supp. 2d 108, 112 (S.D.N.Y. 2004) (same); cf. Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 322 (D.R.I. 1998) ("great weight of authority is to the effect that a defendant may waive her right to challenge personal jurisdiction through a contract").

With respect to Cixi City, Rhode Island law is unambiguous: the applicable statute plainly provides that individuals who assume to act as a corporation without authority to do so

are liable for their undertakings. R.I. Gen. Laws § 7-1.2-1801. Quick Fitting has proffered facts sufficient for jurisdictional purposes establishing that Andrew assumed to act for the entity, Cixi City, on whose behalf he admits he was not authorized to sign. This is enough for him to be bound personally by the waiver of jurisdiction in the forum selection clause. <u>Kingfield Wood Prods., Inc. v. Hagan</u>, 827 A.2d 619, 623 (R.I. 2003) (individuals who enter into contracts on behalf of non-existent corporate entities are personally liable); <u>see</u> <u>Kennett v. Marquis</u>, 798 A.2d 416, 419 (R.I. 2002) (agent may be personally liable for unauthorized acts outside or independent of scope of the agency).

Further, the facts presented do not establish that the naming of Cixi City as a party to the 2010 Agreement is an undisputed mutual mistake. <u>Medrad</u>, 2010 WL 3700826, at *4 (lack of personal jurisdiction waived unless other party was neither "confused [n]or misled" by use of name of non-existent entity). Although Andrew and Jacky argue that Quick Fitting knew that the Yung companies had stopped using Cixi City for manufacturing, <u>see</u> ECF No. 94 at 16-17, Quick Fitting has presented evidence that its president understood that Cixi City was the Yung company responsible for manufacturing and that it therefore was confused or misled by the reference to Cixi City in the 2010 Agreement. ECF No. 95-3 at 5. This is sufficient under the prima facie standard of review.[9] Accordingly, Andrew's execution of the 2010 Agreement, purportedly on behalf of Cixi City but without the authority to bind it, is sufficient under Rhode

---

[9] This factual dispute is intertwined with the merits of Quick Fitting's claims against Andrew and the Yung companies that their conduct was intentionally deceptive to induce it to give them its secrets. Accordingly, it would not be appropriate for this Court to deploy the preponderance method of deciding personal jurisdiction by engaging in fact finding on ultimate issues at this threshold stage of the case. <u>Barry</u>, 909 F. Supp. at 69. If the Court were to employ the intermediate standard, there is no question that Quick Fitting has proffered competent evidence to create a material dispute of a jurisdictional fact through the testimony of its president. <u>See</u> <u>id.</u> at 69-70.

Island law to subject him to specific personal jurisdiction based on the forum selection clause in

the 2010 Agreement. To that extent, I recommend that the motion to dismiss be denied.[10]

Quick Fitting's theory based on the 2010 Agreement that aims at the use of the trade

name, W&F Manufacturing, is another matter. While Quick Fitting is correct that an individual

signing on behalf of a unincorporated association can be subject to personal liability, see, e.g.,

Orix Fin. Servs., Inc. v. LeClair, No. 05-CV-9405KMK, 2007 WL 633706, at *4 (S.D.N.Y. Feb.

26, 2007) (interpreting Rhode Island law), there is no allegation anywhere that Quick Fitting was

actually confused about W&F Manufacturing's status. Quick Fitting's own complaint alleges

that W&F Manufacturing "is a trade name under which the Yungs and/or the Yung Entities, or

some combination of them, have conducted business . . . [and] is the name under which Wai

Mao, Wai Feng Trading, and [Cixi City] Wai Feng Ball Valve executed a written contract."

ECF No. 59 ¶ 55.[11] Where Quick Fitting was not confused or misled but clearly understood that

W&F Manufacturing was simply a trade name used to bind the three entities identified as its

[10] Since personal jurisdiction is determined on a claim by claim basis, Astro-Med, Inc., 591 F.3d at 9, this Court must decide whether personal jurisdiction based on Andrew's signature on the 2010 Agreement should extend to all of Quick Fitting's claims against him. Under the doctrine of pendent personal jurisdiction, "a court may assert . . . personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Jones v. Fairbank Reconstruction Corp., No. 2:11-CV-437-GZS, 2012 WL 3990089, at *4 (D. Me. Sept. 11, 2012) (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004)). Although the First Circuit has not explicitly endorsed the doctrine of pendent personal jurisdiction, several district courts in this Circuit have employed it. See, e.g., Adhesive Techs., Inc. v. Isaberg Rapid AB, No. 10-CV-75-SM, 2011 WL 2134381, at *11 n.7 (D.N.H. May 26, 2011); Glenwood Farms, Inc. v. Cozen O'Connor, 666 F. Supp. 2d 154, 166 (D. Me. 2009); Salpoglou v. Shlomo Widder, M.D., P.A., 899 F. Supp. 835, 838 (D. Mass. 1995). Here, because the 2010 Agreement is the foundation to all of these parties' relationships, all of the other claims against Andrew arise out of the same "nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Jones, 2012 WL 3990089, at *4. Accordingly, I recommend that this Court exercise pendent personal jurisdiction over every other claim against Andrew, in addition to those arising from the 2010 Agreement.

[11] The proposed amended complaint is somewhat different, alleging that "W&F Manufacturing is, or was at the time of the 2010 License and Supply Agreement, either an incorporated business entity, a partnership, or an unincorporated association." Whatever may be the significance of this change, it does not establish that Quick Fitting was confused into believing that W&F Manufacturing was an incorporated entity. See Proposed Am. Compl. ¶ 52 (ECF No. 100-1).

"divisions," its use in the 2010 Agreement is not a proper basis for the exercise of personal jurisdiction over Andrew, despite his signature on its behalf.

Quick Fitting's argument that the 2010 Agreement creates personal jurisdiction over Jacky also hinges on the status of W&F Manufacturing as an unincorporated association. This argument fails for the same reason it fails as to Andrew – because Quick Fitting clearly understood that W&F was just a trade name. It also misfires because Quick Fitting has provided no jurisdictional facts to support a theory of personal liability as to Jacky who did not sign the 2010 Agreement; for example, there is nothing to suggest that Jacky, as an individual, (or Andrew for that matter) is a member in an unincorporated association called W&F Manufacturing. Where Jacky did not sign the 2010 Agreement and Quick Fitting dealt only with Andrew in negotiating the 2010 agreement, what remains is unbridled speculation and conclusory argument. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 284 F. Supp. 2d 204, 216 (D. Mass. 2003) (personal jurisdiction over all members of association does not comport with due process based on conclusory allegations). Due process requires more. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-68 (1st Cir. 1990).

**B.      Specific Personal Jurisdiction Based on Actions on Behalf of EFF Trading Before It Was Incorporated**

Quick Fitting argues that Andrew and Jacky are subject to personal jurisdiction because they took actions on behalf of EFF Trading before it was incorporated. First, Quick Fitting points to Andrew's signature on the 2011 Non-Disclosure Agreement. According to the Yungs' testimony, it was mistakenly signed for EFF Massachusetts but was meant to bind EFF Trading. The problem was that EFF Trading was not incorporated until five months later on October 2011. Second, when Andrew and Jacky visited Quick Fitting in Rhode Island they testified that they were there on behalf of EFF Trading; this also was a month before EFF Trading was

17

incorporated.  Quick Fitting argues these actions taken by Andrew and Jacky on behalf of EFF Trading before its incorporation are attributable to them personally; they cannot rely on the corporate shield and therefore are subject to personal jurisdiction.

This argument is fatally flawed because, if Andrew and Jacky were not acting for EFF Trading because it was not yet incorporated, they were acting for its predecessor, Wai Feng Trading.  The jurisdictional facts establish that Wai Feng Trading remained in existence, so there never was a time when the sales business of the Yung companies operated without the protection of a corporate entity.  Further, even if Quick Fitting can establish that Andrew and Jacky are somehow liable for their actions taken between May and October 2011 before EFF Trading was incorporated, this argument collapses because neither Andrew's nor Jacky's contacts with Rhode Island on behalf EFF Trading are sufficient to support personal jurisdiction.  See Battle Creek Equip. Co. v. Roberts Mfg. Co., 460 F. Supp. 18, 22 (W.D. Mich. 1978).

Quick Fitting's argument that Andrew signed the 2011 Non-Disclosure Agreement[12] before EFF Trading was incorporated is insufficient because signing a contract with an in-forum party, without more, is simply not enough to support jurisdiction.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001).  Similarly, Andrew and Jacky came to Rhode Island on behalf of EFF Trading before it was actually incorporated with a purpose of "just visiting" – they did not discuss any written agreements with Quick Fitting.  ECF No. 92-4 at 9. Merely coming to a jurisdiction to visit a business, without more, is insufficient to invoke personal jurisdiction.  Grange Consulting Grp. v. Bergstein, No. 13-CV-06768 PGS, 2014 WL 5422191, at *1-2 (D.N.J. Oct. 22, 2014) (one visit to forum insufficient for personal jurisdiction); Upstate Networks, Inc. v. Early, No. 6:11-CV-01154 LEK, 2012 WL 3643843, at *6 (N.D.N.Y.

---

[12] This is a materially different theory from the argument based on the 2010 Agreement because the 2011 Non-Disclosure Agreement does not have a Rhode Island forum selection clause.  Accordingly, Quick Fitting cannot claim that Andrew contractually consented to jurisdiction by signing on behalf of a not-yet-incorporated entity.

Aug. 23, 2012) (two or three meetings in forum regarding project insufficient for personal jurisdiction).

Accordingly, I find that Andrew's and Jacky's actions and contacts with Rhode Island, which they testified were on behalf of EFF Trading, but turned out to have occurred before its incorporation, are insufficient to support personal jurisdiction.

### C.  Specific Personal Jurisdiction Based on Veil Piercing

Quick Fitting argues that Andrew and Jacky are subject to personal jurisdiction because the companies have been operated as their alter egos so that the corporate veil should be pierced to reach them individually.  Although a veil-piercing/alter ego theory can subject a business owner to individual liability and personal jurisdiction, N. Laminate Sales, Inc. v. Matthews, 249 F. Supp. 2d 130, 139 (D.N.H. 2003), Quick Fitting's support for this argument falls woefully short.

A threshold problem is what law to apply to the determination whether to pierce the corporate veil of entities incorporated in China, Canada and Massachusetts.  Quick Fitting assumes without analysis that Rhode Island law is applicable.  This is probably wrong – the majority rule is that the reviewing court applies the law of the place of incorporation, even where a contract has a choice of law provision that points elsewhere.  See Blue Whale Corp. v. Grand China Shipping Dev. Co., 722 F.3d 488, 496 (2d Cir. 2013) (piercing corporate veil is collateral to contract; court not bound by choice of law provision); Tomlinson v. Combined Underwriters Life Ins. Co., No. 08-CV-259-TCK, 2009 WL 2601940, at *2 (N.D. Okla. Aug. 21, 2009) (law of state of incorporation governs veil piercing, citing cases); Davaco, Inc. v. AZ3, Inc., No. 3:07-CV-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008) (court declines to apply choice of law provision and instead uses law of state of incorporation).  The minority view is that courts

should apply the law of the state of the entity harmed by the abuse of the corporate form. See BAE Sys. Info. & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc., No. 10-CV-370-LM, 2011 WL 5040705, at *4 (D.N.H. Oct. 24, 2011) (noting split of authority on whether courts should apply the veil-piercing law of the state of incorporation or state of the entity claiming to be harmed by an alleged abuse of corporate form). While no Rhode Island court has squarely addressed this question, it need not be determined here because the veil-piercing standard has not been met, regardless of which law is used.

Whether considering the law of Rhode Island, where "courts are loath to act like Vlad the Impaler,"[13] Doe v. Gelineau, 732 A.2d 43, 44 (R.I. 1999), or the law of Canada,[14] China[15] or Massachusetts,[16] courts are universally hesitant to disregard independent corporate structure and typically require clear evidence to justify doing so. Russell v. Enter. Rent-A-Car Co. of R.I., 160 F. Supp. 2d 239, 250-51 (D.R.I. 2001). Quick Fitting has not only failed to present clear and

---

[13] Under Rhode Island law, "[a]bsent a showing of inequity, fraud, undercapitalization, or domination by the parent corporation, separate corporate identities must be observed." Miller v. Dixon Indus. Corp., 513 A.2d 597, 604 (R.I. 1986).

[14] Under Canadian law, piercing the corporate veil "'usually involve[s] transactions where the use of the corporate structure was a sham from the outset or was an afterthought to a deal which had gone sour.' Without allegations of fraud, deceit, dishonesty or want of authority, 'officers or employees of limited companies are protected from personal liability unless it can be shown that their actions are themselves tortious or exhibit a separate identity or interest from that of the company so as to make the act or conduct complained of their own.'" Wilson v. Servier Can. Inc., [2003] 119 A.C.W.S. (3d) 915, 2003 CarswellOnt 188 (Can. Ont. S.C.) (quoting Montreal Trust Co. of Can. v. ScotiaMcLeod Inc. [1995], 26 O.R. (3d) 481, 1995 CarswellOnt 1203 (Can. Ont. C.A.)).

[15] Under Chinese law, a corporation's veil can be pierced apparently "only in limited circumstances involving undercapitalization or improper registration," and "[w]here any of the shareholders of a company evades the payment of its debts by abusing the independent status of juridical persons or the shareholder's limited liabilities." Mark Wu, Comment, Piercing China's Corporate Veil: Open Questions from the New Company Law, 117 Yale L.J. 329, 332 (2007); Bradley C. Reed, Note, Clearing Away the Mist: Suggestions for Developing A Principled Veil Piercing Doctrine in China, 39 Vand. J. Transnat'l L. 1643, 1662 (2006).

[16] Under Massachusetts law, twelve factors should be considered in deciding whether to penetrate the corporate form: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Lipsitt v. Plaud, 994 N.E.2d 777, 788 (Mass. 2013).

convincing evidence, but has not even established prima facie proof of any of the markers that lead courts to ignore the separate existence of the corporate entity. Specifically, it has offered no evidence of the use of a sham entity, of undercapitalization, of the lack of corporate records, of insolvency, or of the improper use of the corporate form by dominant shareholders. Similarly, there is no evidence that Andrew's and Jacky's companies have failed to follow corporate formalities such as filing registration documents with state registration agencies.

Lacking such evidence, Quick Fitting relies on a mélange of facts, none of which support its alter ego theory. For example, it points out that Wai Feng Trading and EFF Trading, which are predecessor and successor entities, performed essentially the same tasks. It also relies on the transfer by Andrew's and Jacky's mother of her interest in Wai Feng Trading (by then a shell company) to Jacky for no consideration in 2014. These facts establish no more than the creation of a new corporation to take over the business of the old – Quick Fitting presents no case holding that they are sufficient for veil piercing. Relatedly, Quick Fitting argues that the Yung marketing companies based in Canada operate out of the same offices and share an e-mail address and phone number. This proves nothing: use of the same contact information for several corporations is not sufficient to pierce the corporate veil. See <u>Ohio Edison Co. v. Frontier N. Inc.</u>, No. 5:14CV321, 2014 WL 6389564, at *11 (N.D. Ohio Nov. 14, 2014); <u>In re Energy Smart, Inc.</u>, 381 B.R. 359, 379-80 (Bankr. M.D. Fla. 2007). Finally, Quick Fitting raises Jacky's signature on an interrogatory answer that inaccurately said that EFF Trading is owned by him and Andrew; he corrected this error when he testified that he is the sole owner. Such confusion is not subversion of the corporate form.

In all, Quick Fitting's alter ego approach to the exercise of personal jurisdiction over Andrew and Jacky fails because it has not met its burden of establishing facts sufficient to pierce the corporate veil of any of the Yung companies.

### D. Specific Personal Jurisdiction Based on Allegations of Intentional Torts

Next, Quick Fitting alleges that Andrew and Jacky have committed torts against it, causing an injury felt in Rhode Island. This argument ignores the Supreme Court's most recent guidance in Fiore, which teaches that the inquiry must focus not on the locus of plaintiff's injury, but rather on whether the defendant's conduct connects him to the forum. 134 S. Ct. at 1121. Put differently, personal jurisdiction rests on the individual's own contacts with the forum, not someone else's, and the claim that those contacts exist must be buttressed by actual jurisdictional facts. See Mass. Sch. of Law, 142 F.3d at 34; Phillips Exeter Acad., 196 F.3d at 288 n.2 ("[j]urisdictionally speaking, each defendant must stand or fall based on its own contacts with the forum"). The proper question is not whether Quick Fitting experienced a particular injury or effect in Rhode Island, but whether Andrew's or Jacky's conduct was directed at Rhode Island in a meaningful way. Fiore, 134 S. Ct. at 1125; see Websters Chalk Paint Powder, LLC v. Annie Sloan Interiors, Ltd., No. 1:13-CV-2040-WSD, 2014 WL 4093669, at *5-7 n.2 (N.D. Ga. Aug. 18, 2014) (personal jurisdiction lacking when no allegation that individual committed intentional tortious act of transacting business in forum); Interface Grp.-Mass., LLC v. Rosen, 256 F. Supp. 2d 103, 107 (D. Mass. 2003) (court may consider only those specific contacts between individual officer defendant and forum for which plaintiff has produced some evidence). Quick Fitting's jurisdictional facts do not support any such inference.

**E. Personal Jurisdiction Based on 2011 License Agreement**

Quick Fitting contends that Andrew has consented to jurisdiction based on language in the 2011 License Agreement. This convoluted argument relies on the 2011 Agreement's definition of a "Representative" as "directors, officers, employees, agents, consultants, advisors . . . and controlling persons." ECF No. 59-3 at 3. According to Quick Fitting, because persons defined as "Representatives" are subject to certain of the confidentiality requirements in the agreement, they are also bound by the forum selection clause; since it is undisputed that Andrew is the owner of EFF Manufactory, he is a "Representative" and has personally consented to jurisdiction.

This argument deserves short shrift. Andrew signed the 2011 License Agreement in a corporate capacity, not individually. Pinnacle Fitness & Recreation Mgmt. LLC v. v. Jerry & Vickie Moyes Family Trust, No. 08-CV-1368 H BGS, 2010 WL 5141686, at *2 (S.D. Cal. Dec. 13, 2010) (individual signed on behalf of LLC and did not consent to forum selection clause as individual). The term "Representative" is clearly used to restrict the flow of proprietary information – section 2.2 of the contract states that "Supplier shall disclose Confidential Information only to those employees and Representatives of Supplier having a need to know such Information . . . and shall advise each such employee or Representative . . . of the obligations imposed upon him or her under this Agreement." See ECF No. 59-3 at 3 (emphasis added). This language does not convert "Representatives" into parties to the 2011 License Agreement, individually bound by every one of its terms; if it did, every employee of EFF Manufactory, a Chinese company, who has access to Quick Fitting's propriety information has consented to personal jurisdiction in Rhode Island. This makes no sense. Brutz v. Stillwell, No. 1:09 CV 2564, 2010 WL 1924471, at *12 (N.D. Ohio May 12, 2010) (third party not subject to

personal jurisdiction based on forum selection clause in agreement).  Despite its Rhode Island forum selection clause, the 2011 License Agreement does not expose Andrew or any other "Representative" to individual personal jurisdiction in Rhode Island.

**IV.**     **Conclusion**

Based on the foregoing, I recommend that the motion to dismiss for lack of personal jurisdiction (ECF No. 73) of Defendant Jacky Yung be granted and of Defendant Andrew Yung be denied.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 27, 2015