IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WAI FENG TRADING CO. LTD., <br> and EFF MANUFACTORY CO. LTD. <br>     Plaintiffs <br> v. <br><br> QUICK FITTING, INC. <br>     Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CA No. 13-033-S |
| QUICK FITTING, INC. <br>     Plaintiff <br> v. <br><br> WAI FENG TRADING CO. LTD., <br> EASTERN FOUNDRY & FITTINGS, INC., <br> EASTERN FOUNDRY AND FITTINGS, LLC, <br> NINGBO EFF MANUFACTORY CO, LTD., <br> f/k/a NINGBO W&F MANUFACTORY CO., LTD,: <br> WAI MAO COMPANY, LTD., <br> CIXI CITY WAI FENG BALL VALVE <br>     COMPANY, LTD., <br> W&F MANUFACTURING <br> CHI YAM "ANDREW" YUNG <br>     Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CA No. 13-056-S |

**MEMORANDUM IN SUPPORT OF QUICK FITTING, INC.'S RENEWEWD MOTION FOR SUMMARY JUDGMENT AGAINST EFF MANUFACTORY CO., LTD. AND WAI FENG TRADING, CO., LTD. IN C.A. NO. 13-033**

Quick Fitting, Inc. ("Quick Fitting") seeks summary judgment against EFF Manufactory Co., Ltd. ("EFF Manufactory") and Wai Feng Trading Co., Ltd. ("Wai Feng Trading"), on both Counts (I and II) of the CA 13-033 matter.[1]  Summary judgment for

---

[1] Quick Fitting refers to Civil Action No. 13-033, in which Wai Feng Trading and EFF Manufactory claim against Quick Fitting for amounts allegedly owed for the manufacture and supply of proprietary plumbing products.  References will be made simply to "13-033" or to filings in the 13-033 docket as "13-033 Dkt. ##" as appropriate.  Quick Fitting asserted its claims of breach of confidentiality and non-competition and misappropriation of trade secrets as Civil Action No. 13-056.  That matter will be referred to as "13-056" and the filings in the 13-056 docket shall be cited as "13-056 Dkt. ##."

1

Quick Fitting under Rule 56 of the Federal Rules of Civil Procedure is appropriate and necessary as a matter of law under undisputed facts *concerning the claims of 13-033* as stated in the Fourth Amended Complaint.[2]

EFF Manufactory simply has not and cannot establish a breach of any term of the written agreement it entered with Quick Fitting in 2011 (the "*2011 EFF Manufactory Agreement*") and was not a party to any earlier agreement (Count I of the 13-033 complaint). EFF Manufactory is not entitled to recover for "goods sold and delivered" (Count II) as it has admitted it is not owed any money for any products manufactured for Quick Fitting. Under facts that are not in dispute, EFF Manufactory cannot, as a matter of law, prevail on the claims it has asserted against Quick Fitting.

Wai Feng Trading was a party to a contract executed with Quick Fitting in 2010 (the "*2010 Wai Feng Agreement*"), and did business with Quick Fitting for a period of time thereafter, but ceased doing business in August 2011, well before the invoices issued to Quick Fitting that remain in dispute. Wai Feng Trading cannot establish a breach of the *2010 Wai Feng Agreement* (Count I) because the transactions that are the subject of the claims in 13-033 did not arise under that agreement. Business with Wai Feng Trading under the *2010 Wai Feng Agreement* had concluded, and the transactions at issue occurred between Quick Fitting and EFF Manufactory, a separate company, after Wai Feng Trading had, by its own admission, ceased doing business and after Quick Fitting had entered two later agreements with other Yung Entities. Quick Fitting entered two subsequent contracts for the manufacture and supply of the plumbing products at issue, but Wai Feng Trading was not a party to those contracts, and had no other agreement with Quick Fitting. Under facts that are

---

[2]   *See Fourth Amended Complaint*, 13-033 Dkt. 80.

2

not in dispute, Wai Feng Trading cannot, as a matter of law, prevail on the claims it has asserted against Quick Fitting. [3]

In support of this Motion, Quick Fitting relies upon the Amended Statement of Undisputed Facts submitted contemporaneously herewith and referenced and incorporated herein (the "QFSUF"), the materials submitted therewith, the Affidavit of David C. Crompton, and portions of the record identified in this Memorandum.

## I.    RELEVANT FACTS [4]

Quick Fitting is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business at 30 Plan Way, Warwick, Rhode Island. Quick Fitting designs, manufactures, and distributes so-called "push-fit" or "push-to-connect" plumbing fittings and valves. QFSUF, ¶¶1-3. "Push-fit" plumbing technology allows for the permanent connection of pipes, fittings, and valves made of copper, polyvinyl chloride (PVC), and other materials simply by pushing them together by hand, without the need for soldering or other heat or chemical applications, hence the name "push-fit" or "push-to-connect". QFSUF, ¶4. Quick Fitting owns and has applied for multiple United States patents on the technology contained in its products, and strives to protect as trade secrets various design features, materials, sourcing, and methods of manufacture of its push-fit products. QFSUF, ¶5.

Chi Yam "Andrew" Yung and Chi Pang "Jacky" Yung are brothers who reside in

---

[3]   The CA 13-033 matter was initially brought by Wai Feng Trading and Eastern Foundry and Fittings, Inc. ("EFF Inc."). Wai Feng Trading and EFF Inc. thereafter moved to *replace* EFF Inc. with EFF Manufactory. (13-033 Dkt. 24.) Wai Feng Trading, EFF Manufactory, and EFF Inc. have vehemently maintained in these matters that they, and the other entities owned and controlled by the Yungs, are *wholly separate* and *distinct* from one another.

[4]   The facts recited here include background and historical information necessary for an understanding of the history and travel of these disputes. The facts set forth as *undisputed* and essential to this summary judgment motion shall be cited to Quick Fitting's *Statement of Undisputed Facts* ("QFSUF").

Ontario, Canada ("the Yungs"). QFSUF, ¶6. They, their close family relatives, or various combinations thereof, are the principal owners, officers, directors, and/or managers of several entities that are involved in the manufacture and supply of plumbing products (the "Yung Entities"). Quick Fitting contracted with some of them in 2010 and then with a new Yung manufacturing entity in 2011, supplying proprietary information and setting them up to become a manufacturer and supplier of Quick Fitting's proprietary push-fit technology. Neither the Yungs nor the Yung Entities had been engaged in the manufacture or supply of brass push-fit plumbing products. QFSUF, ¶9.

Disputes arose concerning product quality issues and concerning what Quick Fitting alleges were efforts by the Yungs and their entities to circumvent the confidentiality and non-competition restrictions contained in the agreements.[5] Two of the Yung Entities initiated suit against Quick Fitting for non-payment some six weeks after the bulk of the Disputed Invoices had been issued.[6] QFSUF, ¶65. Quick Fitting initiated suit against certain of the Yung Entities and against the Yungs for violations of the restrictive provisions and under the Uniform Trade Secrets Act.[7] *This motion, however, concerns the non-payment claims against Quick Fitting only*, as embodied in the 13-033 matter.

The Yung business entities involved in these cases include the following:

- Wai Feng Trading (one of the plaintiffs in 13-033);

---

[5] These issues, including manufacturing defects, the supply of products containing higher-than-permitted levels of lead, and malfeasance by the Yungs and their entities, are set forth in 13-056, Quick Fitting's claims against Andrew Yung and the Yung Entities. They are relevant in 13-033 insofar as they provide defenses to the claims for "unpaid invoices."

[6] Those claims against Quick Fitting, initially asserted in Canada, were later re-asserted here as Civil Action No. 13-033. QFSUF, ¶71.

[7] Quick Fitting's claims were asserted in this court as Civil Action No. 13-056.

4

- Wai Mao Company, Ltd. ("Wai Mao);

- Eastern Foundry & Fittings, Inc. ("EFF Inc);

- Eastern Foundry & Fitting, LLC ("EFF LLC"); and

- EFF Manufactory (one of the plaintiffs in 13-033).

Wai Feng Trading, Wai Mao, and EFF Inc. are or were Canadian corporate entities organized and existing under the laws of the Province of Ontario, Canada, all with a principal place of business at 10 Brodie Drive, Richmond Hill, Ontario. EFF LLC is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, and is located at 76 Production Road, Walpole, Massachusetts. EFF Manufactory is a Chinese corporate entity organized and existing under the laws of the People's Republic of China, with a principal place of business at Long Shan Industrial District, 208 Long Zhen Road, Cixi City, Ningbo, Zhejiang, China. QFSUF, ¶ 8. [8] It is Wai Feng Trading and EFF Manufactory that are alleging damages against Quick Fitting in 13-033.

The operative pleading in 13-033 is the *Fourth Amended Complaint and Reply to Quick Fitting's Counterclaim* (13-033 Dkt. 80). QFSUF, ¶83. The Fourth Amended Complaint contains two counts – "Breach of Contract" (Count I) and "Goods Sold and Delivered" (Count II). It accurately recites that Wai Feng Trading entered an agreement with Quick Fitting in February 2010, and that EFF manufactory entered into a subsequent agreement with Quick Fitting in May 2011. (13-033 Dkt. 80 ¶¶ 6, 9).[9] The Fourth Amended

---

[8] Wai Feng Trading, Wai Mao, EFF Inc., EFF LLC, and EFF Manufactory, shall at times be referred to collectively herein as the "Yung Entities."

[9] The written agreements attached to the Fourth Amended Complaint are the agreements identified in Quick Fitting Statement of Undisputed Facts as the *2010 Wai Feng Agreement* dated February 16, 2010 and the *2011 EFF Manufactory Agreement*, Exhibits A-1 and A-2 thereto. *See* QFSUF, ¶2.

5

Complaint thereafter simply concludes that Quick Fitting owed "the Plaintiffs," refused to pay, and still "owes Plaintiffs" the amount recited. (13-033 Dkt. 80 ¶¶ 10-14).

Prior to associating with Quick Fitting, neither the Yungs nor any of their entities had been engaged in the design, manufacture, or supply of push-fit plumbing products. QFSUF ¶9. In February 2010, Quick Fitting entered into a written agreement with some of the Yung Entities. Defendant Andrew Yung executed the agreement on behalf of "W&F Manufacturing and its affiliates":



QFSUF ¶10. In that agreement, Wai Feng Trading was identified as a "division" of "W&F Manufacturing." Another of the Yung Entities, Wai Mao, was identified as another division of W&F Manufacturing. *See* 13-033 Dkt. 80 at p. 13. [10] QFSUF, ¶¶ 14-15.

Following execution of the *2010 Wai Feng Agreement*, Quick Fitting provided proprietary plans, designs, drawings, and assistance to enable the "W&F Manufacturing" entities to develop the capability to manufacture brass push-fit plumbing products using Quick Fitting's technology. QFSUF ¶ 24. Quick Fitting for a time issued purchase orders to W&F Manufacturing[11] for push-fit plumbing fittings and valves, QFSUF ¶ 25, but grew dissatisfied due to product quality and service issues, and eventually wished to disassociate

---

[10]   The first paragraph of the *2010 License and Supply Agreement* states that W&F Manufacturing is "comprised of three divisions - Wai Mao Company Ltd., Wai Feng Trading Company, Ltd., and Cixi City Wai Feng Ball Valve Company Ltd., Toronto Canada." The Yungs maintain that Cixi City Wai Feng Ball Valve Company, Ltd. ("Wai Feng Ball Valve"), was *not* part of W&F Manufacturing while they were doing business with Quick Fitting. Wai Feng Ball Valve is or was a Chinese entity that manufactured plumbing products and, perhaps coincidentally, is or was owned by Andrew Yung and Jacky Yung's uncle. QFSUF ¶¶ 17-20.

[11]   They were at times addressed to "Ningbo W&F Mfg." or simply "W&F." *Id.*

itself from W&F Manufacturing, Wai Feng Trading, and Wai Feng Ball Valve. QFSUF ¶ 26. *See* SAC, (Exhibit 1 to QFSUF), at ¶ 75.

The Yungs informed Quick Fitting that they were establishing a new manufacturing facility in China that would operate and be managed separately and in different facilities than the former operation involving the "W&F Manufacturing" entities, Wai Feng Trading and Wai Feng Ball Valve. QFSUF ¶ 27. Instead of the "W&F Manufacturing" operation, the Yungs informed Quick Fitting that their new entities would be branded under variants of the name "Eastern Foundry and Fittings" or "EFF." QFSUF ¶ 28. The Yungs informed Quick Fitting that one of their new companies, EFF Manufactory, would be the new production facility. QFSUF ¶ 29. Quick Fitting's principals made a trip to China and inspected the new EFF Manufactory facilities, which they observed were different from those they knew as the old "W&F Manufacturing"/Wai Feng Ball Valve manufacturing facilities. QFSUF ¶ 32.

Based on the establishment of the new "EFF" operations, Quick Fitting in April 2011 asked the Yungs to execute new nondisclosure and non-competition agreements covering the new entities. QFSUF ¶ 33. Quick Fitting sent them a written nondisclosure agreement (the "*2011 Non-Disclosure Agreement*"), a form used by Quick Fitting on which the name of the other party was blank. Someone – it is still not clear who – filled in by hand the name "Eastern Foundry & Fitting LLC" and the Yungs' Toronto business address in the blank space on the first page of the *2011 Non-Disclosure Agreement*.[12] QFSUF ¶ 34. Andrew Yung executed it and returned it to Quick Fitting. QFSUF ¶ 35.

Quick Fitting also sent the Yungs a separate written agreement titled *License*

---

[12] Though Quick Fitting does not believe it is pertinent to this Motion, there is no such entity as Eastern Foundry & Fitting LLC. Other Yung entities include Eastern Foundry & Fittings, Inc., of Toronto, Ontario, Canada ("EFF Inc."), and Eastern Foundry and Fittings, LLC of Walpole, Massachusetts ("EFF LLC"). Yung has stated that he believes the Non-Disclosure Agreement was supposed to have named EFF Inc.

7

*Agreement with Terms of Confidentiality, Non-Disclosure, and Non-Competition* to be executed on behalf of the new manufacturing facility, EFF Manufactory (the "*2011 EFF Manufactory Agreement*"). The *2011 EFF Manufactory Agreement* identifies EFF Manufactory as the "Supplier." QFSUF ¶¶ 38-40. EFF Manufactory is the only party other than Quick Fitting referred to in it. QFSUF ¶ 40. Andrew Yung executed the *2011 EFF Manufactory Agreement* and returned it to Quick Fitting. QFSUF ¶ 39. After the Yungs identified EFF Manufactory as their new manufacturing facility, Quick Fitting began submitting purchase orders to EFF Manufactory for the production and supply of various styles and configurations ("SKUs") of push-fit plumbing fittings and valves.[13] QFSUF ¶ 29.

Wai Feng Trading was not a party to either the *2011 Non-Disclosure Agreement* or to the *2011 EFF Manufactory Agreement*. QFSUF ¶ 41. Jacky Yung, its owner and president, testified that it ceased operations as of August 2011. QFSUF ¶ 42. The Yungs formed a new company, Eastern Foundry & Fittings, Inc., in Toronto (EFF Inc.), which assumed the business of Wai Feng Trading. QFSUF ¶ 43. Wai Feng Trading's 13 employees became employees of another Yung entity, Wai Mao, to work for Wai Mao and for EFF Inc., and Wai Feng Trading has had no employees since that time. QFSUF ¶ 44. Wai Feng Trading's equipment was transferred to EFF Inc. *Id*.

Wai Feng Trading and EFF Manufactory claim Quick Fitting owes money for some products ordered from EFF Manufactory by way of six (6) separate purchase orders from Quick Fitting. True and accurate copies of the Quick Fitting purchase orders at issue (the "Disputed Purchase Orders") are attached to the Statement of Undisputed Facts as Exhibit P thereto. *See* QFSUF ¶¶ 46-47. Each is addressed to EFF Manufactory as "Vendor," at its

---

[13] The term SKU refers to "stock keeping unit" and is a method of identifying styles and configurations of products.

8

address in China:



QFSUF ¶ 48.

For the products ordered by Quick Fitting on the six Purchase Orders, EFF Manufactory shipped the products directly from China to Quick Fitting.  QFSUF ¶ 53.  Invoices would be generated and sent to Quick Fitting periodically with each shipment, as EFF Manufactory finished a production run of ordered pieces to Quick Fitting.  QFSUF ¶ 54.  Quick Fitting paid for many of the ordered products after receiving and inspecting them, but found problems and withheld payments for some of them.  QFSUF ¶56.

Wai Feng Trading and EFF Manufactory claim Quick Fitting owes money billed on ten invoices (the "Disputed Invoices").  QFSUF ¶ 49.  Some of the invoices are partially paid.  QFSUF ¶¶ 62-63.  All of the invoices at issue are for products Quick Fitting ordered from EFF Manufactory on the Quick Fitting Purchase Orders attached to the Amended Statement of Undisputed Facts at Exhibit Q.  QFSUF ¶ 50.  Though the six Disputed Purchase Orders at issue are all to EFF Manufactory, the ten Disputed Invoices in this litigation all purport to be from Wai Feng Trading.  QFSUF ¶¶ 57-60.

Nine of the ten Disputed Invoices are dated within a 7-week period – between April 27 and June 20, 2012.  QFSUF ¶¶63-64.  This was the same period during which Quick

9

Fitting was finding severe product defects in the valves and fittings received from EFF Manufactory, the simplest to point to being the receipt of 30-thousand ball valves marked "Probite" with plastic handles attached marked "ProLine" - two different trademarks for two different customers.  *See* SAC, Exhibit A to the QFSUF, at ¶¶ 99-100.[14]

During the course of business between Quick Fitting and one or more of the Yung Entities, Quick Fitting generally and perhaps exclusively rendered payments for products electronically, *via* wire transfer to one or more bank account numbers provided by the Yungs.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper only if the record, read favorably to the non-moving party, reflects no genuine issues of material fact and the undisputed facts indicate that the movant is entitled to judgment as a matter of law." *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir. 2006)  "[A] party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "To satisfy the criterion of trialworthiness, and thereby forestall summary judgment, an issue must be 'genuine,' that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion . . . must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of

---

[14]  EFF Manufactory and Wai Feng Trading have and will dispute the circumstances and responsibility for dealing with this and other discovered defects. They are raised here by way of background only to explain *some of* Quick Fitting's reasoning in withholding payments on the final group of invoices, no matter who they were from.

either side." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Moreover, "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve…." *Id.*  A material fact is one that "has the capacity to sway the outcome of the litigation under the applicable law." *Id.*

### III.  ARGUMENT

#### A. Summary Judgment Must Be Granted Against EFF Manufactory on Count I As Quick Fitting Did Not Breach The 2011 EFF Manufactory Agreement.

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2005).[15]  "Contract interpretation presents, in the first instance, a question of law, and is therefore the court's responsibility." *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989).  If there are no ambiguities in a contract, summary judgment is "an appropriate vehicle for resolving contract-interpretation disputes." *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995).

A party establishes a breach of contract claim when that party demonstrates a "violation of a contractual obligation, either by failing to perform one's promise or by interfering with another party's performance." *Demicco v. Med. Assocs. of R.I., Inc.*, No 99-2512, 2000 WL 1146532 (D.R.I. July 31, 2000) (citing Black's Law Dictionary, 182 (7th ed. 1999)).  Paraphrasing the Court in *A.J. Amer. Agency, Inc. v. Astonish Results, LLC*, 2014

---

[15]     Paragraph 5.11 of the *2011 EFF Manufactory Agreement* clearly states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Rhode Island and the laws of the United States of America applicable to contracts executed in and to be performed in Rhode Island."

11

U.S. Dist. LEXIS 94325 (D.R.I. May 23, 2014), the substantive breach of contract analysis must begin with the language of the *2011 EFF Manufactory Agreement* itself - examining each claim individually, the Court must determine what the agreement promised, whether the language of the promise is ambiguous, permitting consideration of parol evidence, and whether EFF Manufactory has pointed to disputed facts sufficient to establish that Quick Fitting materially breached that promise.

EFF Manufactory in the Fourth Amended Complaint *states* that Quick Fitting breached the *2011 EFF Manufactory Agreement,* but does not even attempt to identify what provision within that contract it alleges Quick Fitting violated.  EFF Manufactory of course infers that Quick Fitting's alleged unexcused failure to fully pay was itself a breach, but the argument is circular.  The *2011 EFF Manufactory Agreement* contains few requirements for Quick Fitting.  It was, as titled, a license agreement with terms of confidentiality, non-disclosure, and non-competition, whereby Quick Fitting granted EFF Manufactory (identified in the agreement as "Supplier") a limited right and license to use Quick Fitting's intellectual property and confidential information to manufacture and supply proprietary products and component pieces for Quick Fitting.

EFF Manufactory has put forth no evidence or even argument demonstrating that Quick Fitting has breached any provision of the *2011 EFF Manufactory Agreement*.  It has not – and cannot – demonstrate that Quick Fitting violated or failed to perform any of its contractual obligations under it and cannot recover under it.

**B. Summary Judgment Must Be Granted Against EFF Manufactory on Count I and on Count II as EFF Manufactory Admits Quick Fitting Does Not Owe It Any Money for Products Supplied.**

Count II of EFF Manufactory's Fourth Amended Complaint contains nothing more

than the bare and unsupported recitation that Quick Fitting "owes Plaintiffs $477,661.47 for goods sold and delivered by Plaintiffs to Defendant between February 16, 2010 and July 20, 2012." EFF Manufactory cannot as a matter of law prevail on its claim that Quick Fitting owes it any money for the products in dispute in this litigation, as EFF Manufactory has *admitted* that Quick Fitting does not owe it any money. EFF Manufactory has explicitly admitted, in answers to interrogatories, that "*Quick Fitting does not owe money to [EFF Manufactory] for the unpaid invoices at issue in this litigation*."[16] QFSUF ¶80.

Questioned at deposition, Andrew Yung, the president and owner of EFF Manufactory, confirmed he had no information that EFF Manufactory was owed money from Quick Fitting:

```
14   Q. Aside from [legal counsel]
15   has anyone told you that Quick Fitting
16   owes EFF Manufactory some money?
17   A. No.
18   Q. Neither Jimmy, your father, or Jacky, your brother,
19   has said that; correct?
20   A. No.
```

QFSUF ¶ 81.

Simply put, as well as having no basis to claim payment from Quick Fitting, EFF Manufactory has already been paid for the products supplied to Quick Fitting. QFSUF ¶ 82. Its claims against Quick Fitting must be dismissed.

### C. **Summary Judgment Must Be Granted Against Wai Feng Trading on Count I As Quick Fitting Did Not Breach Any Contract With Wai Feng Trading.**

As discussed above, "[t]o succeed on a breach of contract claim under Rhode Island

---

[16] Moreover, EFF Manufactory has failed to produce any documents, books, or records evidencing any debt owed to it by Quick Fitting.

law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2005).  Based on the undisputed facts in this matter, Wai Feng Trading cannot prove that Quick Fitting breached any contract with it.  The only contract ever entered into between Quick Fitting and Wai Feng was the *2010 Wai Feng Agreement* in February 2010, referenced in Count I of the Fourth Amended Complaint.

Wai Feng Trading cannot point to a breach of that agreement.  Quick Fitting ceased doing business with Wai Feng Trading after entering the *2011 EFF Manufactory Agreement.* QFSUF ¶¶46-48.  Quick Fitting issued all of the Purchase Orders at issue to EFF Manufactory, not to Wai Feng, Wai Mao, or any other party in the *2010 Wai Feng Agreement*.  *Id.*, and Exhibit Q thereto.  As the Yungs admit in their pleading, the products and the invoices came from EFF Manufactory: "Each shipment of items was accompanied by an invoice."  QFSUF ¶ 54, quoting the Yung Entities' *Fourth Amended Complaint*, 13-033 Dkt. 80, ¶ 8.  Moreover, the Disputed Invoices, though they contain Wai Feng Trading's name, are all dated between October 2011 and June 2012, from two months to *ten* months *after* Wai Feng Trading ceased operations (August 2011).  QFSUF  ¶42, ¶63-64 and Exh. R thereto.

Wai Feng Trading is unable to satisfy essential elements of its Count I breach of contract claim, and the Court must grant summary judgment to Quick Fitting on Wai Feng Trading's claim based on the *2010 Wai Feng Agreement* as a matter of law.

    D. **Summary Judgment Must Be Granted Against Wai Feng Trading on Count II – Goods "Sold and Delivered".**

In conclusory fashion, Wai Feng Trading claims in Count II of the Fourth Amended

Complaint that Quick Fitting "owes Plaintiffs $477,661.47 for goods sold and delivered by Plaintiffs to Defendant between February 16, 2010 and July 20, 2012." First, earlier transactions – which *did* involve Wai Feng and the W&F Manufacturing "affiliates" - might have arisen as early as February 2010 (the date of the Wai Feng contract), but there is no *genuine* issue that the claimed amount does not result from the ten identified invoices, which are dated between October 2011 and June 2012, after Wai Feng Trading admits it had ceased operations and well after Quick Fitting had entered the 2011 contract with EFF Manufactory.

A cause of action for "goods sold and delivered" is not well defined. The Rhode Island Model Jury Instructions refer to a "book account for goods sold and delivered" and suggest that a claimant must prove, in part, that: "(a) the parties had an agreement that plaintiff would ship/deliver goods to defendant based on defendant's offer to purchase the goods…." RI Model Jury Instructions, §3008.5.[17] There are *no* facts establishing any agreement between Wai Feng Trading and Quick Fitting at the time of the Disputed Invoices, and the undisputed facts suggest otherwise.

Though Jacky Yung, the principal of Wai Feng Trading, said he thought it was "always agreed on," he also admitted he had no first-hand knowledge of such an agreement, and said it was his brother Andrew and Quick Fitting that would have been parties to it. QFSUF ¶58-59. Andrew Yung, the principal of EFF Manufactory, knew of no such agreement, and didn't even know why the bills had Wai Feng's name on them:

```
10   What I'm trying to ask is why purchase
11   orders -- why the invoices were from Wai Feng Trading
12   Company when the purchase orders were actually to EFF
13   Manufactory in China?
```

---

[17]    A claim for account stated requires "an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance." First Union Discount Brokerage Servs., Inc. v. Milos, 997 F.2d 835, 841 (11th Cir. 1993) (citation omitted).

```
14   MR. LYONS: Objection. Scope.
15   THE DEPONENT: Okay. In my email
16   inbox it is always under Ningbo EFF -- okay. As far
17   as the purchase orders go from Quick Fitting it's
18   always written this way, Ningbo EFF Manufactory Co.,
19   Ltd. It always goes to my email inbox. As far as
20   what is on the other one document why it's written
21   there as Wai Feng Trading Co., Ltd., I don't know why.
22   This is all accounting, like, matters. So I'm not too
23   sure how they would handle that.
24   BY MR. NOEL:
25   Q. Was it your understanding that Quick Fitting

1    was to be paying Wai Feng Trading Company?
2    MR. LYONS: Objection. Scope.
3    THE DEPONENT: Yes, that's what I
4    understand.
5    BY MR. NOEL:
6    Q. But you don't know why it was set up this
7    way?
8    A. That I don't know.
```

QFSUF ¶ 60.

Evidence produced by the claimants in 13-033, like their own testimony, means there can be no genuine issue of disputed fact that Quick Fitting had any agreement with Wai Feng Trading *concerning the products and shipments at issue* and an "account":

- The products for which Wai Feng Trading claims Quick Fitting owes money were ordered by way of six (6) separate purchase orders from Quick Fitting *to EFF Manufactory,* each of which is addressed to EFF Manufactory as "Vendor," at its address in China.   QFSUF ¶¶ 46-48.

- The first of the Disputed Invoices is dated October 5, 2011, *not February 2010*, and was issued months after execution of the *2011 EFF Manufactory Agreement* and after Wai Feng Trading had stopped conducting business.  QFSUF ¶61.

- The next Disputed Invoice is dated April 27, 2012 – 11 months after the *2011*

16

> *EFF Manufactory Agreement* and eight months after Wai Feng Trading says it had ceased operations. QFSUF ¶63.

- The other eight Disputed Invoices are dated over a five-week period between May 17, 2012 and June 20, 2012, a year after execution of the *2011 EFF Manufactory Agreement* between Quick Fitting and EFF Manufactory and even longer after Wai Feng Trading says it had ceased operations. QFSUF ¶64.

- Moreover, Wai Mao was apparently the only Yung-related entity that had an import-export license permitting orders to EFF Manufactory in China. QFSUF ¶¶76-77.

It would make little sense to infer that Quick Fitting would have agreed with Wai Feng Trading to fill that role.[18] There is no *genuine* issue that there was such an agreement between Wai Feng Trading and Quick Fitting for the orders to and shipments from EFF Manufactory at issue herein.

## IV.  CONCLUSION

Quick Fitting does not suggest that it withheld payments on the Disputed Invoices based on the summary arguments presented herein. Quick Fitting withheld certain payments based on product quality issues and explicitly reserves its defenses concerning those issues and concerning breaches of the confidentiality and non-competition provisions of the agreements and the explicit provision in the 2011 EFF Manufactory Agreement that entitles Quick Fitting to withhold payments otherwise due upon breach of those provisions. Quick Fitting asserts these issues affirmatively in 13-056 and defensively in 13-033. The fact remains, however, that whatever arrangement the Yung Entities may claim to have had

---

[18] Again, the Fourth Amended Complaint does not allege as much. On the same point, EFF Manufactory can point to no documents, books, or records evidencing any "account" with Quick Fitting.

among *themselves*, under the undisputed facts outlined herein, neither Wai Feng Trading nor EFF Manufactory are entitled to recover against Quick Fitting *under the claims as asserted* in their action.  Summary judgement I favor of Quick Fitting is appropriate and necessary under the undisputed facts at the core of those claims.

Date: November 17, 2017                                             **QUICK FITTING, INC.**

By Its Attorneys,

/s/  Thomas R. Noel
Thomas R. Noel, Esq. (#4239)
John R. Harrington, Esq. (#7173)
NOEL LAW
203 South Main Street, Suite 2
Providence, RI  02903
Tel:  401-272-7400
Fax:  401-621-5688
TNoel@LawNoel.com
JRHarrington@LawNoel.com

### CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2017, I served a copy of the foregoing via the Court's Electronic Case Filing System, upon:

Thomas W. Lyons, Esq.
Rhiannon S. Huffman, Esq.
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903

/s/  Thomas R. Noel